UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jonathan Peterkin,<br><br>                              Plaintiff,<br><br>              -v-<br><br>Suffolk County Correctional Department (Officers) (Yaphank); Suffolk County Medical Staff (Yaphank),<br><br>                              Defendants. | 2:25-cv-2382<br>(NJC)(ARL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is a motion to proceed in forma pauperis ("IFP") filed by pro se Plaintiff Jonathan Peterkin ("Peterkin") while incarcerated at the Suffolk County Correctional Facility (the "Jail") in conjunction with his Complaint bringing claims concerning conditions of his confinement while detained at the Jail. (IFP Mot., ECF No. 6; Compl., ECF No. 1.)[1] Peterkin's responses in the IFP motion qualify him to commence this action without prepayment of the filing fee. Accordingly, the IFP motion is granted. However, for the reasons that follow, the Complaint is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i)–(ii) and with leave to file an amended complaint.

---

[1] Peterkin has filed three motions to proceed IFP. The first IFP motion accompanied the Complaint and is unsigned. (ECF No. 2.) The second and third IFP motions were filed on May 8, 2025; however, the third IFP motion is also unsigned. (ECF Nos. 6–7.) The first and third IFP motions are denied because they are unsigned. Accordingly, the Court considers only the second IFP Motion (ECF No. 6).

## BACKGROUND[2]

On April 28, 2025, Peterkin filed a Complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against "Suffolk County Correctional Dept. (Officers) (Yaphank)" and "Suffolk County Medical Staff (Yaphank)" (together, "Defendants") claiming that officers used excessive force and challenging the sufficiency of the medical treatment provided to him following a fight in which he was involved while detained at the Jail. (Compl. § IV.–V.)

Peterkin's Complaint is submitted on the Court's civil rights complaint form for claims brought pursuant to Section 1983. The Complaint includes the following statement of Peterkin's claims:

> I WAS INVOLVED IN A FIGHT AND WHEN THE CO'S CAME TO BREAK IT UP I STOPPED RIGHT AWAY AND COMPLIED. THE OFFICERS TASED ME THE TEAR GAS SPRAYED ME MORE THAN ONCE THEY TASED ME. I WAS TAKEN TO THE MEDICAL UNIT AND A NURSE WAS PRESENT. DUE TO BEING TASED AND SPRAYED I HAD A DIFFICULT TIME BREATHING AND MY VISION WAS DISTORTED FOR AT LEAST A HALF HOUR. I INFORMED THEM THAT I NEED SERIOUS MEDICAL ATTENTION LIKE AN OUTSIDE DOCTOR. THE OFFICERS TOLD ME TO "SHUT THE FUCK UP BEFORE THEY FUCK ME UP." IM A 51 YR OLD MAN INVOLVED IN A FIGHT WITH SOMEONE HALF MY AGE. HE STARTED THE FIGHT SWINGING AT ME AND I WAS FORCED TO DEFEND MYSELF. MY SHOULDER HAS BEEN IN SEVERE PAIN EVER SINCE. TWO WEEKS OR MORE PAST BEFORE I WAS CALLED TO MEDICAL FOR A SONOGRAM X-RAY WHICH DIDN'T SHOW ANYTHING. I HAD TO KEEP DROPPING SLIPS TO THE MEDICAL UNIT CAUSE I WAS MOVED TO RIVERHEAD CORRECTIONAL FACILITY. WAS TOLD THAT NO BONES WERE BROKEN. BUT TOLD DOCTOR IN RIVERHEAD THAT I NEED "MRI" CAUSE SOMETHING MUST BE TORN OR RIPPED IN MY SHOULDER AND THE DOCTORS RESPONSE WAS IT'S A PROCESS HERE. I HAD MY FIGHT 3/18/25 AND WAS PLACED IN THE BOX (SOLITARY CONFINEMENT) ON 3/28/25 AND I STAYED IN THE BOX FOR 20 DAYS IN PAIN WITH NO MEDICAL ATTENTION WHATSOEVER. WAS TOLD TAKE ASPIRIN TO SEE IF MY SHOULDER GOT BETTER BUT TO NO AVAIL. ITS BEEN OVER A MONTH SINCE I

---

[2] Excerpts from the Complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

> GOT HURT IN THE FIGHT WITHOUT PROPER MEDICAL ATTENTION. I WAKE UP IN COLD SWEATS HAVE REOCCURRING NIGHTMARES OF BEING TASED AND PEPPER SPRAYED THINKING THAT THE CORRECTIONAL OFFICERS ARE GOING TO KILL ME CAUSE THEY THREATENED ME REPEATEDLY. AS TO DATE I STILL HAVEN'T RECEIVED PROPER MEDICAL TREATMENT. FILED GRIEVANCE WAS TOLD IT HAD NO MERIT. ENCLOSED IS COPY OF GRIEVANCE.

(*Id.* § IV.)[3] In the space that asks for a description of any injuries claimed and any medical treatment that was required and/or received, the Complaint alleges that Peterkin:

> SUFFERED IN ALTERCATION RIGHT SHOULDER AND BACK STILL IN CONSTANT PAIN. VISION AND BREATHING DUE TO DUE TO BEING TASED AND PEPPER SPRAYED AND EXCESSIVE FORCE BY OFFICERS. REQUESTED OUTSIDE MEDICAL ATTENTION (MRI) OR ANOTHER FORM OF X-RAY TO DETERMINE THE SEVERITY OF MY INJURIES BUT TO NO AVAIL. FILED GRIEVANCE WAS TOLD IT HAD NO MERIT.

(*Id.* § IV.A.)

For relief, the Complaint states that Peterkin seeks a damages award in the total sum of $3 million comprised of compensatory damages of $1 million for "pain and suffering and excessive force and medical mistreatment" and $2 million in punitive damages. (*Id.* § V.)

---

[3] Peterkin's grievance alleges the following: "I WAS IN A FIGHT AND GOT HURT. I ASKED FOR MEDICAL ATTENTION BUT DIDN'T GET ANY. IM STILL HURT." (Compl. at 7.) The grievance also states that Peterkin is requesting the following action be taken: "I NEED TO SEE AN OUTSIDE DOCTOR THE HOSPITAL." (*Id.*) The decision of the Grievance Coordinator, signed on April 9, 2025, reflects that the grievance was denied on the merits:

> Inmate Peterkin's claim that he did not receive medical attention after the incident mentioned in his grievance has been determined to be unfounded by the Grievance Unit. Inmate Peterkin was seen and evaluated in the JMU after the incident mentioned in this grievance and he was medically cleared for housing. A copy of this grievance was forwarded to the JMU to address any medical issues. He is reminded not to use the Grievance Program as a request slip.

(*Id.*)

3

## LEGAL STANDARDS

### I.     In Forma Pauperis

Upon review of Peterkin's IFP motion, the Court finds that Peterkin is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the IFP motion (ECF No. 6) is granted.

### II.    Sufficiency of the Pleadings

Where an incarcerated plaintiff is proceeding IFP, 28 U.S.C. § 1915A instructs that "[t]he court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b); *see also* 28 U.S.C. § 1915(e)(2)(B). At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation marks omitted).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79. While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The factual allegations of a complaint must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Hassan v. U.S. Fed. Deposit Ins. Corp*, No. 23-1113, 2024 WL 1132244, at *2 (2d Cir. Mar. 15, 2024) (summary order). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Cuoco*, 222 F.3d at 112; *Hassan*, 2024 WL 1132244, at *2.

## DISCUSSION

### I. Section 1983 Claims

Peterkin's claims are brought pursuant to Section 1983. (Compl. at 1.) Section 1983 provides redress for constitutional deprivations and provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)); *accord Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-441, 2024 WL 1193062, at *1 (2d Cir. Mar. 20, 2024) (noting that Section 1983 does not provide an independent source of substantive rights). To maintain a Section 1983 action, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). A plausible Section 1983 claim must allege the *personal involvement* of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Alke v. Adams*, 826 F. App'x 4, 6 (2d Cir. 2020) (same).

Here, a liberal construction of the Complaint suggests that Peterkin intends to pursue excessive force claims against the corrections officers who are alleged to have tased and pepper


sprayed him following the fight and deliberate indifference claims against the Yaphank medical staff concerning the adequacy of the medical care thereafter. (Compl. § IV.) For the reasons that follow, the Section 1983 claims fail because the Complaint has not sufficiently pled a cause of action against any individual defendant, and, even if it had, the Complaint does not allege a plausible excessive force or deliberate indifference claim.

      A.  <u>Claims Against Yaphank "Corrections Officers" and "Medical Staff"</u>

Peterkin's Section 1983 claims are brought against "Suffolk County Correctional Dept. (Officers) (Yaphank)" and "Suffolk County Medical Staff (Yaphank)." (Compl. at 1.) Although it is permissible for a plaintiff to plead causes of action against a "John Doe" or "Jane Doe" defendant where the identity of the intended individual is unknown, Rule 8(a) of the Federal Rule of Civil Procedure requires that the Complaint allege specific facts that would help identify the defendants and thereby allow defendants to prepare a defense. *See, e.g.*, *Regeda v. City of New York*, No. 09-cv-5427, 2012 WL 7157703, at *8 (E.D.N.Y. Sept. 7, 2012) (noting that a plaintiff, in an amended complaint, must either "identify each [defendant] by name, or else identify them as the 'John Doe defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe defendants and prepare for a defense"), *report and recommendation adopted*, 2013 WL 619567 (S.D.N.Y. Feb. 19, 2013); *Barreto v. Cnty. of Suffolk*, 762 F. Supp. 2d 482, 487–88 (E.D.N.Y. 2010) (holding that a complaint against John Doe defendants satisfied Rule 8(a), as liberally applied to pro se complaints, where the plaintiff "identified the specific [jobs] that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place" related to the cause of action, and "provided the grounds for liability with regards to each of the [d]efendants," such that those defendants had "ample notice as to the nature of the claims brought against them [and] also the

opportunity to prepare an intelligent defense"); *Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (holding that a complaint "fail[ed] to plead a claim against the Doe defendants" under Rule 8(a) where it contained no information specific to the identities or actions of those defendants).

Here, even affording Peterkin's pro se Complaint a liberal construction, the allegations do not sufficiently allege facts concerning each intended defendant such that these individuals may be identified. Indeed, apart from the date of March 18, 2025, Peterkin has omitted important facts such as the location within the Jail, the time of day, a description of each of the intended individual defendants, and how many of the generally named "corrections officers" or "medical staff" were involved. (Compl. in toto.) And, even if the Defendants' identities could be ascertained, Peterkin's allegations do not sufficiently plead plausible excessive force or deliberate indifference claims for the reasons set forth below.

### B. Excessive Force

Claims alleging excessive force by an individual in custody may arise under the Eighth Amendment's prohibition on cruel and unusual punishment or the Fourteenth Amendment's due process clause. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) (noting that plaintiffs "incarcerated for a criminal conviction draw on the Eighth Amendment's ban on cruel and unusual punishments" to bring excessive force claims.); *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 251–52 (2d Cir. 2020) (pretrial detainees are protected "from the use of excessive force that amounts to punishment" by the Due Process Clause of the Fourteenth Amendment). The Second Circuit instructs that "[t]o succeed on an Eighth Amendment claim, a plaintiff 'must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official.'" *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020)

(quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). By contrast, a pretrial detainee bringing a Fourteenth Amendment excessive-force claim must plausibly allege the defendant acted deliberately and "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Factors to consider in determining the objective reasonableness of the force used under the Fourteenth Amendment include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397. However, "a claim of excessive force," under the Fourteenth Amendment, "may be established even if the victim does not suffer 'serious,' . . . or 'significant' injury, . . . provided that the amount of force used is more than 'de minimis,' or involves force that is 'repugnant to the conscience of mankind.'" *United States v. Walsh*, 194 F.3d 37, 47–48 (2d Cir. 1999) (quoting *Hudson v. McMullian*, 503 U.S. 1, 9 (1992)).)

Here, Peterkin does not allege whether he is a pretrial detainee (whose claim would arise under the Fourteenth Amendment) or a person who has been sentenced (whose claim would arise under the Eighth Amendment). (*See generally* Compl.) Though Peterkin's conviction status is critical to determining the plausibility of his excessive force claims, the Court cannot ignore Peterkin's allegation that he was tased and pepper sprayed even though he "stopped right away and complied" when corrections officers came to break up the fight. (Compl. § IV.) Assuming the truth of Peterkin's allegations, as the Court must at this pleading stage, *Ashcroft*, 556 U.S. 678–80, Peterkin's description of the challenged events suggests that such claims would survive screening, pursuant to 28 U.S.C. § 1915A, had he asserted them against a proper defendant.

9

Thus, Peterkin's excessive force claims are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i)–(ii) and with leave to amend as set forth below.

      C. <u>Deliberate Indifference Claim</u>

Like excessive force claims, Section 1983 claims alleging deliberate indifference to a detained person's serious medical need may be brought under the Eighth Amendment or Fourteenth Amendment depending upon the individual's conviction status. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."); *see also Swinton v. Livingston Cnty.*, No. 21-1434, 2023 WL 2317838, at *2 (2d Cir. March 2, 2023) (summary order) (analyzing a pretrial detainee's denial of medical treatment claim under the Fourteenth Amendment standard).

The standard for deliberate indifference under both amendments involves a two-pronged test that requires showing an "objective deprivation" with the requisite "mens rea," *Darnell*, 849 F.3d at 32, 35. To satisfy the first prong, often framed as the "objective prong," both amendments "require[] a showing that the challenged conditions were sufficiently serious such 'that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Volant v. Nassau Cnty.*, No. 2:24-cv-7882, 2025 WL 580367, at *3 (E.D.N.Y. Feb. 23, 2025) (quoting the discussion of Eighth and Fourteenth Amendment conditions of confinement claims in *Darnell*, 849 F.3d at 30). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (quotation marks omitted).

10

As for the mens rea prong, the Eighth Amendment requires a showing "that a prison official had the requisite 'culpable intent,' which is present if the official 'has knowledge that [a prisoner] faces a substantial risk of serious harm *and* he disregards that risk by failing to take reasonable measures to abate the harm.'" *Smith v. New York State,* No. 23-cv-6601, 2024 WL 4746554, at *2 (2d Cir. Nov. 12, 2024) (summary order) (*quoting Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)) (emphasis in original). As such, "mere negligence will not suffice." *Id.*

By contrast, under the Fourteenth Amendment, the mens rea prong requires showing that the defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "In other words, the . . . 'mens rea prong' . . . is defined objectively" under the Fourteenth Amendment. *Id.*; *see also Charles v. Orange County*, 925 F.3d 73, 86–87 (2d Cir. 2019) (holding that while this "formulation of the deliberate indifference standard was developed in cases involving unconstitutional conditions of confinement," the "same principles" apply to claims of unconstitutionally inadequate medical treatment). However, negligence is insufficient to satisfy the mens rea component of a Fourteenth Amendment claim of deliberate indifference to a detained person's serious medical need. *Darnell*, 849 F.3d at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently."). Thus, "a plaintiff must demonstrate, 'at a minimum,' that the defendant provided deficient medical treatment with 'culpable recklessness . . . that evinces a conscious disregard of a substantial risk of serious harm' to his health." *Swinton*, 2023 WL 2317838, at *2 (quoting *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021)).

Here, as noted above, the Complaint does not allege whether Peterkin is a pretrial detainee (whose claim would arise under the Fourteenth Amendment) or a person who has been sentenced (whose claim would arise under the Eighth Amendment). (*See generally* Compl.) Under both the Eighth Amendment and Fourteenth Amendment, the first prong of a deliberate indifference claim requires a plaintiff to plead sufficient factual allegations to show an objectively serious inadequacy in medical care. *See Horace v. Gibbs*, 802 F. App'x at 11, 13–14 (2d Cir. 2020). Even assuming that this first prong is met, the Complaint's thin allegations do not satisfy the second prong of the deliberate indifference tests under either the Eighth Amendment or Fourteenth Amendment. Indeed, the Complaint does not allege any facts suggesting intentional or reckless conduct that a defendant knew or should have known would pose an excessive risk to his health or safety. (*Id.*) Without additional allegations as to Defendants' knowledge about Peterkin's injured shoulder, Peterkin's belief that he required diagnostic imaging in the form of an MRI by an outside provider or a different form of X-ray (Compl. § IV.A) is insufficient. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (recognizing that "disagreement over the proper treatment does not create a constitutional claim[,] [s]o long as the treatment given is adequate . . . ."); *Collins v. Figura*, No. 23-109, 2024 WL 1739084, at *1 (2d Cir. Apr. 23, 2024) (summary order) (same); *Charles*, 925 F.3d at 88–89 (acknowledging that "mere medical malpractice is not tantamount to deliberate indifference [under the Fourteenth Amendment], but it may rise to the level of deliberate indifference when it involves culpable recklessness," as when defendants knew of plaintiff's serious mental health conditions and failed to provide adequate healthcare); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might

12

prefer a different treatment does not give rise to an Eighth [or Fourteenth] Amendment violation."). Thus, Peterkin's deliberate indifference claims are not plausible and are therefore dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i)–(ii) and with leave to amend as set forth below.

## II.     State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, in the absence of a plausible federal claim, the Court declines to exercise subject matter jurisdiction over any potential state law claims that may be liberally construed from the Complaint.

## III.     Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotation marks and citation omitted); *see also Hassan*, 2024 WL 1132244, at *2 (quotation marks omitted). Leave to amend should be denied where amendment of the complaint would not cure the substantive defects of the claim. *Hassan*, 2024 WL 1132244, at *2.

13

Here, in an abundance of caution, Peterkin is granted leave to file an amended complaint to afford him an opportunity to allege a plausible claim. If Peterkin chooses to amend his Complaint, he shall: (1) do so **within thirty (30) days** from the date of this Memorandum and Order; (2) clearly label it "Amended Complaint"; (3) and include the same docket number as this Order, No. 25-cv-2382.

Peterkin must include in any amended complaint the individuals who were allegedly involved in the deprivation of his federal rights as defendant(s) in the caption and in the statement of claim. If Peterkin does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. Further, Peterkin is reminded to review the Court's guidance set forth above concerning the requirements to allege facts supporting plausible excessive force and deliberate indifference claims, including whether Peterkin was detained in the Jail pre-trial or post-conviction when the alleged incident occurred. (*See supra* Discussion § I.A.–C.) Peterkin is cautioned that the amended complaint will completely replace, not supplement, the prior complaint, so any facts or claims that Peterkin wants to include from the prior complaint must be repeated in the amended complaint. If Peterkin does not timely file an amended complaint, judgment shall enter without further notice and this case will be closed. Alternatively, Peterkin may pursue any valid claims he may have, including for negligence or medical malpractice, against the defendants in state court.

## CONCLUSION

For the reasons stated above, the Court grants Peterkin's IFP motion (ECF No. 6) and dismisses the Complaint (ECF No. 1) pursuant to 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i)–

(ii) without prejudice and with leave to file an amended complaint **within thirty days of the date of this Memorandum and Order**.

The Clerk of the Court shall mail a copy of this Memorandum and Order to Peterkin at his address of record in an envelope bearing the notation "Legal Mail" and shall also record such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. See *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
August 28, 2025

      */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge